

# THE ATTORNEY GENERAL
## OF TEXAS

PRICE DANIEL                     AUSTIN, TEXAS
ATTORNEY GENERAL


April 28, 1949


Hon. William J. Murray, Jr.
Chairman, Railroad Commission
Austin, Texas

                    Opinion No. V-816

                    Re:  The effect of filing a
                         plug and abandonment re-
                         port on a Rule 37 permit.

Dear Sir:

        Your letter of March 21, 1949, concerns a
pending application to clean out, redrill, and pro-
duce a well.  The accompanying file indicates that
under date of December 20, 1937, a notice of inten-
tion to drill a Number 2 well on a .49 acre tract
was submitted to the Railroad Commission.  It was
shown at the hearing on January 14, 1938, that the
well was desired as a staggered offset to a well on
another tract.  An exception to Rule 37 and a permit
to drill was granted by order of January 25, 1938,
specifying the location.  No protest or attack on
the order is shown in the file.

        An application to plug dated May 21, 1941,
received by the Commission in Austin on May 24, 1941,
states that drilling was commenced October 21, 1938,
and completed November 3, 1938; that the total depth
was 3,561 feet; and that the well was not producing.
The deputy supervisor of the district, under date of
May 22, 1941, noted on the application, "OK, 18 sacks
cement."

        The plugging record, received by the Com-
mission in Austin June 3, 1941, recites that the
well was plugged on May 22, 1941; that it was filled
with mud-laden fluid, according to the regulations
of the Commission; that 22 sacks of cement were used
in plugging; that the well was not shot; that 2,463
feet of casing was pulled; and that the well was not
producing when plugged.  It appears from testimony

that the pumping equipment, the derrick founda-
tion and the surface pipe were left at the loca-
tion. The plugging was voluntary and not under
orders of the Commission.

An application to drill two feet over from
the original location in the name of the original
permittee, dated August 9, 1946, was heard August 23,
1946. The notice stated that:

> "This location is to take the
> place of old well No. 2, which was
> plugged and abandoned due to mechan-
> ical trouble."

The position was taken at the hearing that the original
well was plugged in error and that a good well could be
drilled. The application was refused September 11,1946,
apparently because the No. 1 well was considered to be
properly placed and would drain the tract.

An application dated April 25, 1947, to "re-
drill, clean out and produce well No. 2 . . . which
was voluntarily plugged on account of mechanical con-
dition and which was a good producing well" was received
in Austin on April 29, 1947. The Commission first treat-
ed the application as an application for rehearing and
refused to set it for hearing. Under date of August 7,
1947, apparently under advice of this Office, notice of
a hearing on August 18 was given, stating:

> " . . . the location being re-
> quested as follows: 25 feet northwest
> of Well No. 1, and 25 feet southeast
> of the northwest line. To be drilled
> to 3700 feet. This is a request to re-
> drill, clean out, and produce well No.2
> which was voluntarily plugged on ac-
> count of mechanical condition."

The location specified is one foot closer to
the northwest property line than the location speci-
fied in the original permit. The depth proposed is
the same as originally applied for but is 140 feet
greater than the total depth shown on the plugging re-
cord.

A memorandum by the applicant's attorney sub-
mitted on August 18, 1947, takes the position that the

applicant still has rights under the original per-
mit and should be permitted to go back in the same
hole and put the well on production.

A letter of protest dated August 22, 1947
states that the applicant is producing through its
No. 1 well more oil than the amount originally in
place and has a net drainage advantage; that the
tract is already twenty times more densely drilled
than the field average; that the application would
double the density; and that old well No. 2 has been
formally and finally plugged and abandoned.

The application was refused on October 21,
1947, one Commissioner stating that after conference
with members of this Office, he had concluded that
the application must be treated as one to drill a
new well, the original permit having been cancelled
by the voluntary filing of the plugging and abandon-
ment report.

Another application by the same party was
filed November 26, 1948, "to drill, clean out and
produce well No. 2 . . . which was voluntarily plugged
on account of mechanical condition and which was a good
producer." The location applied for is again one foot
closer to the northwest line than the original No. 2
permit distance. This application was treated as a
motion for rehearing and was ordered granted on Decem-
ber 22, 1948, and set to be heard January 17, 1949.

It further appears from the Commission's
files that a permit for a No.3 well on a subdivision
of the original tract was granted on December 6,
1940, "to prevent confiscation of property and to
prevent physical waste." The No. 2 well had not been
plugged at this time.

Your letter requests our opinion on the
following question, which we quote:

"Is the Rule 37 permit origi-
nally granted . . . (for the) No. 2
well still a valid permit in spite
of the fact that the well was subse-
quently plugged and abandoned and are
they (the applicant) entitled to re-
drill and produce this well under the
original permit?"

You refer us to the recent case of Humble Oil & Refining Co. v. Cook, 215 S.W.2d 383 (Tex.Civ.App. 1948, error ref.n.r.e.).

The Cook case was an attack on a permit granted in January, 1947 to the fee owner to "redrill and put back on production" an old well which had been voluntarily plugged in December, 1941, by the assignee of a former lessee. An "Application to Plug and Well Record" and a "Plugging Record" had been filed with the Commission. Cook purchased the property in August, 1946, after ascertaining that the lease had terminated and that the permit and right to produce the old well had not been challenged.

The Court of Civil Appeals held that the Cook tract was a subdivision and was not entitled to the original (1937) permit as an exception to prevent confiscation, but that Humble could not now attack it.

Humble argued that the 1947 permit to "redrill and put back on production" should be tested by the rules governing original permits, that since the original well had been abandoned, the permit therefor must have terminated. The appellees, in a brief signed by a member of this Office, answered that the Commission could not in 1947 have reviewed the granting of the original permit, but could only hear and determine (1) the physical status of the well; (2) the proposed "rework" operations; and (3) the degrees of deviation from the vertical of the proposed redrilling; all so that the Commission's records might reflect what was proposed to be done with the well, so that the Commission could control the "rework" operations, and so that, when completed, the Commission could place the well "back on production" by assigning it an allowable. The following statement is quoted from the appellees' brief:

> "We believe this case must be affirmed on this ground: It is admitted that the well went off production purely because of mechanical defects. When it went off, it was a legal well, so held and regarded by all. A mechanical defect does not change a legal well into an illegal one. The Railroad Commission has unlimited power to permit mechanical defects to be remedied, and whatever

those defects may be in nature or
scope or costs is the concern of the
operator. The order was broad enough
to permit any repairs necessary to be
made as long as the same, or practi-
cally the same, hole was used. We
perceive that such repairs are usually
made by an operator, even without an
order, and certainly without opening
up the question of the validity of the
original order made nine years previous-
ly."

The Court of Civil Appeals affirmed the trial
court judgment, refusing to invalidate Cook's permit.
In its opinion, the Court said:

"A permit of the Railroad Com-
mission to drill a test well for oil
or gas, on its face, grants this per-
mission and nothing more. Strictly
speaking, it might be said that when
the well is drilled, the office of the
permit is terminated and the permit "ex-
hausted." We know that this is not the
full nature of an application to drill a
well nor the extent of the rights con-
ferred by a permit to drill. As a necessa-
ry consequence such permit carries with it
the right, in the event of production, to
operate the well and to produce the oil
or gas under the rules and regulations of
the Railroad Commission. The life of such
permit and the privileges conferred by it
are not limited by any law or rule of the
Commission.

"This record does not show that the
rights and privileges granted by the orig-
inal permit have been actually or factu-
ally terminated and we have found no le-
gal basis for holding that they have ex-
pired as a matter of law. (215 S.W.2d at
386).

" . . .

"Abandonment is principally a matter
of intention which must be established by

clear and satisfactory evidence. . . .
An intention to abandon involves an
intention not to return and reoccupy
the property. . . .

"Measured by these standards
the evidence does not conclusively
show an abandonment. At most an issue
of fact was raised which under the im-
plied findings of the Commission and
trial court have been resolved against
appellant. These findings are support-
ed by substantial evidence." (215 S.W.
2d at 387).

In Respondent's reply to Humble's application,
it was argued that writ of error should not be granted
because the order of the Commission granting the original
permit necessarily found that there was no illegal sub-
division, and such order was not now open to attack.

The Supreme Court refused the application
with the notation, "Refused. No Reversible Error,"
thereby indicating (Rule 483, Tex. Rules Civ. Proc.)
that ". . . the Supreme Court is not satisfied that the
opinion of the Court of Civil Appeals in all respects has
correctly declared the law but is of the opinion that the
application presents no error which requires reversal. . . ."

In Humble's Motion for Rehearing of the applica-
tion for writ of error, it was argued that the Court of
Civil Appeals had gone beyond the stipulation of the
parties (quoted 215 S.W.2d at 384) and the record on the
issue of whether the old permit was still in effect af-
ter the well was abandoned.

Even if the Court of Civil Appeals opinion in
the Cook case be taken as deciding that a Rule 37 permit
is still valid as a matter of law in spite of the fact
that the well is subsequently plugged and abandoned, some
doubt is cast on such decision by the disposition of the
application by the Supreme Court and by the alternative
theory for denial of the writ suggested by Respondents.
Too, Humble strongly urged that any decision as to the
original permit was outside the record.

We deem it best, in view of the foregoing, to
construe the Cook case as deciding that an order of the
Commission granting a permit "to redrill and put back

on production" a plugged and abandoned well will not be set aside if there is substantial evidence to support a finding of fact that the original permit had not been abandoned. So considered, the Cook case is authority for the Commission to determine, regarding the present application, the issues of abandonment and feasibility of redrilling the well. As a preliminary, it must necessarily be decided that the instant application is, in fact, an application to redrill the former permit and is not for a new well.

As a corollary, it is our opinion that an order of the Commission refusing such a permit would be sustained if there is substantial evidence to support a finding that the original permit had been abandoned, or that it was not feasible to redrill the well and put it back on production.

Since the instant application requires the determination of factual issues, we cannot pass on it as a matter of law. We do point out, however, the marked similarity between the instant case and the Cook case. Determination of the factual issues herein should be made in the light of the legal tests laid down therein.

## SUMMARY

An application "to drill, clean out, and produce" a well drilled under an unattacked permit granted as an exception to Rule 37 may be granted although the tract was not originally entitled to an exception and although the well was plugged and reported eight years ago, if the Railroad Commission finds from substantial evidence that the original permit has not been aban-

doned and that it is feasible to redrill the well and put it back on production.

Yours very truly

ATTORNEY GENERAL OF TEXAS

By       Ben H. Rice, III
           Assistant

BHR:bt

APPROVED:

ATTORNEY GENERAL